## J. CLAMPITT *v.* THE STATE.

1. CHANGE OF VENUE. — Since as well as before the revision of the Codes, the rule has been settled that applications for change of venue on account of local prejudice are confided to the discretion of the trial judge, and that his action is not revisable on appeal unless an abuse of his discretion is apparent.

2. Continuance. — In revising the refusal of a continuance asked on account. of the absence of a witness, the materiality of the desired testimony is considered in the light of the evidence adduced at the trial.

3. Same — New Trial. — By the Revised Code of Procedure, the truth, sufficiency, and merits of first as well as subsequent applications for continuance are subjected to the discretion of the trial courts. If overruled and the defendant convicted, and on the trial it appears that the continuance should have been granted, a new trial should be awarded, and the case be continued or postponed, in order that the absent testimony may be procured.

4. Evidence. — In a trial for murder, it being in proof that the deceased, on being mortally wounded by the defendant in a *rencontre*, was carried into a witness's house, the State was allowed, over objection, to prove that in the succeeding night some one near the house said, "I wish I had a double-barrelled shot-gun; I would turn both barrels loose in that room," and the witness, looking out, saw the defendant and no other person. *Held*, properly admitted as tending to prove malice.

Appeal from the District Court of Franklin. Tried below before the Hon. B. T. Estes.

The indictment charged the appellant with the murder of one James A. McCoy, by stabbing him with a knife, on December 20, 1879, and inflicting a wound of which said McCoy died on January 5, 1880.

The *rencontre* in which the deceased received the mortal wound was the result of a fight, a few hours previously, between the defendant and a nephew of the deceased, named Johnson, who seems to have got the worst of it. Coming upon the scene and finding Johnson bruised, the deceased became incensed, and inquired who did it. Being informed that Clampitt, the appellant, was the person, the deceased started towards him, but was stopped by one Wilson. Some quarrelling appears to have ensued between Clampitt and Wilson on the one part, and the deceased on the other, until Wilson picked up a piece of a box and said he believed he would give McCoy (the deceased) a little whipping and make him go home. A by-stander remonstrated with him, and he threw down the piece of box, saying he did not want a difficulty, but was tired of being " dogged after "

by McCoy. Clampitt and Wilson then went out of the storehouse in which the altercation had been going on, and stopped near the house. After awhile McCoy, who had been drinking more or less, also came out of the storehouse, and some one suggested to him to go to his home. McCoy replied that he did not intend to go home until he skinned a man's head with an iron wedge which he was carrying in his hand. On making this remark he started off towards a mill in the vicinity. Overhearing McCoy's remark, either Clampitt or Wilson said, "We have taken enough," and both started towards McCoy, who started to meet them. A witness seized Clampitt and Wilson, and called for help to keep them away from McCoy. Another witness came up and took hold of Wilson, but Clampitt succeeded in struggling loose from the one who held him, and immediately ran to McCoy and struck him two or three times. It was dusk, and the witnesses saw no knife in Clampitt's hands, but a noise like the cutting of cloth accompanied the blows, and McCoy immediately cried out that he was cut all to pieces. Several witnesses for the State concurred in testifying that McCoy was making no hostile demonstration when the defendant ran up and cut him. One witness for the defence stated that when the defendant got within about three feet of McCoy, the latter raised the iron wedge, but was prevented from using it by the defendant seizing his arm with his left hand while he struck with the other.

The State proved that after the fight between Clampitt and Johnson, and before the affray in which McCoy was cut, a witness told Clampitt that McCoy had an iron wedge and might hurt him with it, and Clampitt replied that he had a knife whetting for McCoy. Other testimony adduced by the State as proof of malice is shown by the fourth head-note. The jury found appellant guilty of murder in the second degree, and assessed his punishment at twenty years in the penitentiary.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *W. B. Dunham*, for the State.

Winkler, J.    The appellant was indicted for the murder of one James A. McCoy, in Franklin County, alleged to have been committed by means of a knife in the hands of the accused, and the infliction upon the body of said McCoy, on December 20, 1879, of certain mortal wounds, which resulted in death on January 5, 1880. The indictment was returned into court and filed March 30, 1880.

On April 6, 1880, the defendant filed a motion for a change of venue, on the ground that there existed against him so great a prejudice in Franklin County that he could not obtain a fair and impartial trial in that county. The application for change of venue was made on the affidavit of the defendant, supported by the affidavits of three other persons. In determining the motion for change of venue, the court heard the evidence of two of the supporting affiants, and others, whose testimony is set out in a statement of facts agreed to by counsel and approved by the judge, and on the hearing the motion was overruled and a change of venue refused ; and to the ruling of the court the defendant's counsel took a bill of exceptions.

Thereupon the counsel representing the State in the prosecution announced ready for trial, when the defendant applied for a continuance, alleging that he could not go to trial on account of the absence of certain witnesses material for his defence. The court overruled the defendant's application for a continuance, and his counsel took a bill of exceptions to the ruling. Another bill of exceptions reserved at the trial, and set out in the transcript, was taken to the admission of certain testimony offered by the State, over objection by the defendant. These are the material questions presented by the record for our consideration.

With respect to the defendant's application for a change of venue, it has been the settled rule, before as well as since the revision of the Codes, that application for a change of venue must, under the law, be confided to the discretion of the judge to whom the application is addressed in the first instance ; and his discretion will not be revised by this court, on appeal, unless it be made to appear that the discretion confided by law to the trial judge has been abused to the prejudice of the defendant.    *Noland* v. *The State*, 3 Texas Ct. App. 598 ; *Daugherty* v. *The State*, 7 Texas Ct. App. 480 ; *Dunn* v. *The State*, 7 Texas Ct. App. 600 ; *Myers* v. *The State*, 7 Texas Ct. App. 640.    From the testimony taken on the motion for a change of venue, we fail to discover that the cause for which it was. asked was so clearly shown to exist that we can say the judge abused his discretion to the prejudice of the defendant.    His action must be sustained.

In considering the application for a continuance, it is a rule well settled that, in determining the question as to the materiality of the evidence of the absent witnesses, in order to pass upon the question as to whether the court should have granted the continuance or not, we will look to all the testimony adduced on the trial.    *Cantu* v. *The State*, 1 Texas Ct. App. 402 ; *Richardson* v. *The State*, 2 Texas Ct. App. 322 ; *Willison* v. *The State*, 7 Texas Ct. App. 400, and cases there cited.    By an examination of the statements set out in the affidavit for continuance, as to what the absent witnesses would prove, in the light afforded by the whole testimony, as set out in the statement of facts, we fail to discover that it is of sufficient importance to change the result.

By a provision of the Code of Criminal Procedure, the truth of a first or any subsequent application, as well as the merit of the ground set forth in the defendant's application, and its sufficiency, are addressed to the sound discretion of the court called to pass upon the application ; and a

continuance is not to be granted as matter of right, though it be a first application. But it is provided that, should an application for a continuance be overruled and the defendant convicted, if it appear on the trial that the evidence of the witness or witnesses named in the application was of a. material character, and that the facts set forth in said application were probably true, a new trial should be granted and the case continued for the term, or be postponed to a future day of the same term. Code Cr. Proc., art. 560, subd. 6.

In the present case, the ruling of the court on the defendant's application for a continuance is made a ground in the motion for a new trial. The law above set out was in force at the time the trial was had, and when the motion for a new trial was overruled. It is but fair to presume that the judge below acted with the law before him, and with a full realization of the important and responsible duty imposed on him by law, in passing upon the motion for a continuance in the first place, and subsequently on the motion for a new trial, and that he had good grounds for his action in both instances ; and we have failed to discover that the trust confided to him has been abused or improperly exercised.

With reference to the testimony objected to, and set out in the bill of exceptions, we are of opinion, in view of the other evidence, that the testimony was admissible as tending to show the malice of the defendant towards the deceased. It was properly allowed to go to the jury for that purpose.

The charge of the court was an able, impartial, and accurate enunciation of the law of the case, and embraced every legitimate view of the evidence as we find it set out in the statement of facts. The law of murder, both in the first and second degrees, including express and implied malice, was sufficiently explained. The jury were properly informed as to their duty in case they should determine that the defendant struck the fatal blow in the necessary defence

of himself.   Among other instructions, the jury were told that, " to justify the act, if the evidence shows that the defendant committed it as charged, there must be at least an apparent necessity to ward off some unlawful and violent attack.   It is not enough that the defendant believed himself to be in danger, unless the facts and circumstances were such that the jury can say that he had reasonable ground for his belief."

It is shown in evidence that the defendant was acting with another, immediately preceding and up to the time the deceased cried out that he was cut all to pieces.   The law of principals acting together in the perpetration of crime was given to the jury in an appropriate charge on that subject. No exception was taken to the charge at the time of delivery, and we discover nothing in it of which the appellant can complain.   No additional instructions were asked by the defendant's counsel, nor is it seen that any were required by the evidence.

From a careful examination of the whole case as made by the record (and we have nothing else, not even an index, to guide us), our convictions are that the appellant has been fairly tried and legally convicted of murder in the second degree ; that the proceedings have been conducted with sufficient regularity, and that the evidence supports the verdict and judgment.   The judgment of the District Court is affirmed.

*Affirmed.*